BILLY J. WILLIAMS, United States Attorney
RENATA GOWIE, Chief, Civil Division
1000 SW Third Av., Suite 600
Portland, OR  97204
Telephone: (503) 727-1000

CHAD A. READLER, Acting Assistant Attorney General
R. MICHAEL UNDERHILL, Attorney in Charge
FRANK J. ANDERS, Trial Attorney
West Coast Office, Torts Branch, Civil Division
U.S. Department of Justice
P.O. Box 36028, 450 Golden Gate Avenue, Room 7-5395
San Francisco, California 94102-3463
Telephone: (415) 436-6630; Facsimile: (415) 436-6632
E-mail: mike.underhill@usdoj.gov; franklin.j.anders@usdoj.gov

Attorneys for Plaintiff United States of America

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Case No.: 3:18-cv-01566 |
| Plaintiff, | ) IN ADMIRALTY |
| vs. | ) **VERIFIED COMPLAINT OF THE** |
| CLAY JONAK, ROGER ISON, JONAK-ISON PARTNERSHIP, and UNKNOWN DEFENDANTS 1-10, | ) **UNITED STATES** |
| Defendants. | ) |

Plaintiff, the United States of America, through its undersigned counsel, files this Complaint, and alleges upon information and belief as follows:

### NATURE OF THE ACTION

1.    This is an admiralty and maritime claim against defendants CLAY JONAK, ROGER ISON, JONAK-ISON PARTNERSHIP, and UNKNOWN DEFENDANTS 1-10, *in personam* (collectively "DEFENDANTS"), as hereinafter more fully appears, and within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

///

2.      The United States expressly reserves the right to amend this Complaint to include, *inter alia*, adding additional claims and additional parties.

## JURISDICTION AND VENUE

3.      The United States is authorized to bring this suit and the Court has jurisdiction pursuant to, *inter alia*, 28 U.S.C. § 1345, 33 U.S.C. § 2717, and 42 U.S.C. § 9613.

4.      Venue is properly in this Court pursuant to, *inter alia*, 28 U.S.C. § 1391, 33 U.S.C. § 2717, and 42 U.S.C. § 9613.

5.      The United States brings this action on behalf of the Oil Spill Liability Trust Fund (hereinafter, the "Fund"), pursuant to the Oil Pollution Act of 1990 (hereinafter, the "OPA"), 33 U.S.C. § 2701 *et seq.*, to recover any and all removal costs and damages incurred directly by the Fund, any removal costs and damages incurred by the Fund through compensation paid to any claimant, and all costs incurred by the Fund by reason of any such claims, including interest, prejudgment interest, adjudicative costs, and attorney's fees.

6.      Pursuant to the OPA, 33 U.S.C. § 2712(f), the United States has acquired by subrogation, or may in the future acquire by subrogation, the rights of any claimant or State paid compensation from the Fund.  The United States specifically reserves the right to amend this Verified Complaint to assert any or all such subrogated rights and claims, pursuant to the OPA, 33 U.S.C. § 2712(f).  Pursuant to the OPA, 33 U.S.C. § 2712(f)(2), and 28 U.S.C. § 2201, the United States also seeks a declaratory judgment on liability for response costs that will be binding on any subsequent action to recover further response costs that will be binding on any subsequent action to recover further response costs.

7.      The United States also bring this action on behalf of the United States Environmental Protection Agency (hereinafter, the "EPA") pursuant to Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (hereinafter, the "CERCLA"), as amended, 42 U.S.C. § 9607. The United States seeks to recover response costs which the EPA incurred in conducting removal actions as a result of releases and threatened releases of hazardous substances into the environment.  Pursuant to Section 113(g)(2) of the CERCLA, 42 U.S.C. § 9613(g) and 28 U.S.C. § 2201, the United States also seeks a declaratory

judgment on liability for response costs that will be binding on any subsequent action to recover further response costs that will be binding on any subsequent action to recover further response costs.

## **PARTIES**

8.      At all times material herein, the vessels HV NEWELL, DREDGE MULTNOMAH, TUG EARNEST, BARGE D.B. AMAZON, M/V RIVER QUEEN, THE MANZANILLO, THE LEGO BARGE, THE 25, and THE PANCAKE BARGE (collectively, hereinafter referred to as the "VESSELS") were vessels believed owned by CLAY JONAK, ROGER ISON, and JONAK-ISON PARTNERSHIP, and each of them, and operated by CLAY JONAK,  ROGER ISON, and JONAK-ISON PARTNERSHIP, and each of them, and at all material times hereto were within the jurisdiction of this Court with respect to the matter alleged in this Complaint.

9.      At all material times the VESSELS were "vessels" within the meaning of, *inter alia*, the OPA, 33 U.S.C. § 2701(37), and the CERCLA, 42 U.S.C. § 9601(28).

10.      At all times material herein, defendant CLAY JONAK, based upon information and belief, presently is believed to have a residence and place of business in the State of Oregon, had a place of business and/or was doing business within this district and within the jurisdiction of this Court, including but not limited to, through, *inter alia*, the ownership and/or demise chartering and/or operation of the VESSELS, and each of them, at the time of, and with respect to, the matters sued upon herein.

11.      At all times material herein, defendant CLAY JONAK, based upon information and belief, owned the VESSELS, and each of them.

12.      At all times material herein, defendant CLAY JONAK, based upon information and belief, was owner *pro hac vice* of the VESSELS, and each of them.

13.      At all times material herein, defendant CLAY JONAK, based upon information and belief, operated the VESSELS, and each of them.

14.      At all times material herein, defendant CLAY JONAK, based upon information and belief, managed the VESSELS, and each of them.

15.     At all times material herein, defendant CLAY JONAK, based upon information and belief, demise chartered the VESSELS, and each of them.

16.     At all times material herein, defendant CLAY JONAK, based upon information and belief, controlled the VESSELS, and each of them.

17.     At all material herein, defendant CLAY JONAK, based upon information and belief, operated, managed, directed, controlled, and conducted operations having to do with the discharge and/or disposal of oil and hazardous materials from the VESSELS, and each of them, and operated, managed, directed, controlled, and conducted operations having to do with compliance with environmental regulations concerning the VESSELS, and each of them.

18.     At all times material herein, defendant ROGER ISON, based upon information and belief, presently believed to have a residence and place of business in the State of Oregon, had a place of business and/or was doing business within this district and within the jurisdiction of this Court, including but not limited to, through, *inter alia*, the ownership and/or demise chartering and/or operation of the VESSELS, and each of them, at the time of, and with respect to, the matters sued upon herein.

19.     At all times material herein, defendant ROGER ISON, based upon information and belief, owned the VESSELS, and each of them.

20.     At all times material herein, defendant ROGER ISON, based upon information and belief, was owner *pro hac vice* of the VESSELS, and each of them.

21.     At all times material herein, defendant ROGER ISON, based upon information and belief, operated the VESSELS, and each of them.

22.     At all times material herein, defendant ROGER ISON, based upon information and belief, managed the VESSELS, and each of them.

23.     At all times material herein, defendant ROGER ISON, based upon information and belief, demise chartered the VESSELS, and each of them.

24.     At all times material herein, defendant ROGER ISON, based upon information and belief, controlled the VESSELS, and each of them.

///

25.    At all times material herein, defendant ROGER ISON, based upon information and belief, operated, managed, directed, controlled, and conducted operations having to do with the discharge and/or disposal of oil and hazardous materials from the VESSELS, and each of them, and operated, managed, directed, controlled, and conducted operations having to do with compliance with environmental regulations concerning the VESSELS, and each of them.

26.    At all times material herein defendants CLAY JONAK and ROGER ISON associated with each other to carry on as co-owners a business for profit with regard to the VESSELS, including ownership, operation, management, and/or chartering of the VESSELS, and each of them, and this association caused the creation of the JONAK-ISON PARTNERSHIP.

27.    Since defendants CLAY JONAK and ROGER ISON were partners in the JONAK-ISON PARTNERSHIP with regard to the VESSELS, including ownership, operation, management, and/or demise chartering of the VESSELS, and each of them, they are each jointly and severally liable for all obligations of the partnership.

28.    At all times material herein, defendant JONAK-ISON PARTNERSHIP, based upon information and belief, presently believed to have a residence and place of business in the State of Oregon, had a place of business and/or was doing business within this district and within the jurisdiction of this Court, including but not limited to, through, *inter alia*, the ownership and/or demise chartering and/or operation of the VESSELS, and each of them, at the time of, and with respect to, the matters sued upon herein

29.    At all times material herein, defendant JONAK-ISON PARTNERSHIP, based upon information and belief, owned the VESSELS, and each of them.

30.    At all times material herein, defendant JONAK-ISON PARTNERSHIP, based upon information and belief, was owner *pro hac vice* of the VESSELS, and each of them.

31.    At all times material herein, defendant JONAK-ISON PARTNERSHIP, based upon information and belief, operated the VESSELS, and each of them.

32.    At all times material herein, defendant JONAK-ISON PARTNERSHIP, based upon information and belief, managed the VESSELS, and each of them.

///

33.     At all times material herein, defendant JONAK-ISON PARTNERSHIP, based upon information and belief, chartered the VESSELS, and each of them, by operation of law.

34.     At all times material herein, defendant JONAK-ISON PARTNERSHIP, based upon information and belief, controlled the VESSELS, and each of them.

35.     At all times material herein, defendant JONAK-ISON PARTNERSHIP, based upon information and belief, operated, managed, directed, controlled, and conducted operations having to do with the discharge and/or disposal of oil and hazardous materials from the VESSELS, and each of them, and operated, managed, directed, controlled, and conducted operations having to do with compliance with environmental regulations concerning the VESSELS, and each of them.

36.     At all times material herein, and by reason of the matters alleged in this Complaint, defendant CLAY JONAK is a "responsible party" within the meaning of the OPA, 33 U.S.C. § 2701 *et seq.*

37.     At all times material herein, and by reason of the matters alleged in this Complaint, defendant ROGER ISON is a "responsible party" within the meaning of the OPA, 33 U.S.C. § 2701 *et seq.*

38.     At all times material herein, and by reason of the matters alleged in this Complaint, defendant JONAK-ISON PARTNERSHIP is a "responsible party" within the meaning of the OPA, 33 U.S.C. § 2701 *et seq.*

39.     At all times material herein, defendant CLAY JONAK was within the scope of entities specified in the CERCLA, 42 U.S.C. § 9607(a), with respect to hazardous substances and the matters alleged in this Complaint.

40.     At all times material herein, defendant ROGER ISON was within the scope of entities specified in the CERCLA, 42 U.S.C. § 9607(a), with respect to hazardous substances and the matters alleged in this Complaint.

41.     At all times material herein, defendant JONAK-ISON PARTNERSHIP was within the scope of entities specified in the CERCLA, 42 U.S.C. § 9607(a), with respect to hazardous substances and the matters alleged in this Complaint.

42.     At all times material herein, defendants CLAY JONAK, ROGER ISON, and JONAK-ISON PARTNERSHIP, as well as other persons or entities whose identities are not yet known, were at all material times, and pursuant to information or belief, acting as agents and/or alter egos of each other with respect to the matters alleged in this Complaint and are therefore responsible and liable, jointly and severally, for all of each of the others' obligations, acts, omissions, and strict liability with respect to the matters alleged in this Complaint and action.

43.     This Complaint herein does not presently assert claims for natural resource damages.  The United States expressly reserves the right to amend this Complaint to add such claims for natural resource damages.

44.     The United States expressly reserves the right to amend this Complaint to, *inter alia*, add additional parties and assert additional claims against such additional parties and the present DEFENDANTS herein.

## **GENERAL ALLEGATIONS**

45.     In July 2013, defendants CLAY JONAK and ROGER ISON entered into a lease for 3.98 acres of submerged lands in the Columbia River and within navigable waters of the United States at or near Goble, Oregon (hereinafter "GOBLE MOORAGE"), and moored various vessels, including the VESSELS, at this location.

46.     At all relevant times, the VESSELS were moored in the Columbia River and within navigable waters of the United States.

47.     By 2015, the GOBLE MOORAGE contained a collection of approximately twenty-eight vessels, including the HV NEWELL, DREDGE MULTNOMAH, TUG EARNEST, BARGE D.B. AMAZON, M/V RIVER QUEEN, THE MANZANILLO, THE LEGO BARGE, THE 25, and THE PANCAKE BARGE, all located in the Columbia River and within navigable waters of the United States, as aforesaid.

48.     DEFENDANTS obtained a policy or policies of insurance that provided coverage for the discharges of oil and hazardous substances alleged in this lawsuit, including United Specialty Insurance Company's Facility Exposures Environmental Liability Policy No. 4110653. United Specialty Insurance Company has filed a Declaratory Action in this Court seeking a

judgment that "it owes no duty to defend or indemnify Defendants [CLAY JONAK and ROGER ISON] against the Claim and any related litigation or administrative proceedings under the Policy." (*United Specialty Insurance Company, Plaintiff-Appellee, v. Clay Jonak and Roger Ison, Defendants, and State of Oregon, Intervenor-Appellant*, case no. 3:17-cv-00330-AC, Docket No. 1, at 40.) The United States expressly denies that United Specialty Insurance Company is not obligated under said policy and/or policies of insurance to pay for the liabilities that are the subject of this Complaint and action.

49.    The State of Oregon has appealed the foregoing case to the Ninth Circuit Court of Appeals, and on November 29, 2017, the District Court issued an Order staying that action pending resolution of the appeal. United States reserves any and all rights pertaining to the foregoing policy and/or policies of insurance, including, but not limited to, the right to intervene in that lawsuit once the case has returned to the jurisdiction of the District Court.

### HV NEWELL (FPN S15032)

50.    At all relevant times, vessel HV NEWELL contained oil, as such term is defined under the OPA, 33 U.S.C. § 2701 *et seq.*

51.    On or about September 26, 2015, defendant CLAY JONAK contacted the United States Coast Guard and reported that the HV NEWELL was sinking while moored in the Columbia River, and was discharging oil.

52.    When United States Coast Guard personnel arrived on-scene on September 26, 2015, they observed the HV NEWELL partially submerged, an oil sheen on the water surrounding the HV NEWELL, and a constant stream of oil discharging from cracks in the HV NEWELL's hull. DEFENDANTS deployed a containment boom and placed absorbent pads inside the boom, but DEFENDANTS' actions failed to successfully contain and clean-up the spill.

53.    Once it had been determined that DEFENDANTS could not contain and clean-up the discharge, the United States Coast Guard, the Federal On-Scene Coordinator (hereinafter, "FOSC"), federalized the response, accessed the Fund, and issued a contract for pollution removal services.

///

54.    On or about September 26, 2015, Global Diving and Salvage, Inc., at the direction of the FOSC, provided a dive team to assess the condition of the HV NEWELL as well as an environmental response team to conduct containment and clean-up of the diesel oil.   Global removed an estimated 300 gallons of diesel fuel from tanks on HV NEWELL.

55.    On or about September 27, 2015, pursuant to POLREP 1 AND FINAL, the removal action was deemed completed.

56.    The foregoing discharge of oil and continuing substantial threat of discharge, including other acts and omissions to be established according to proof at trial, are hereafter referred to as the "HV NEWELL Incident."

57.    The removal costs expended on and specifically attributed to the HV NEWELL Incident were captured under the Federal Project Number: S15032.

58.    The HV NEWELL Incident was proximately caused, *inter alia*, by the acts, omissions, strict liability, and violations of federal construction and/or operating and/or safety regulations by the HV NEWELL, its owners, crew, agents, servants, employees, and others for whom DEFENDANTS were responsible, all within the privity and knowledge of DEFENDANTS.

59.    During the course of the removal action, the United States expended substantial "removal costs" and sustained "damages" within the meaning of the OPA, 33 U.S.C. § 2702(b).

60.    The United States, by and through the FOSC, contracted with various entities, including but not necessarily limited to, Global Diving and Salvage, Inc., to respond to the discharge of oil from HV NEWELL. The United States paid these entities for the removal costs incurred in responding to the discharge and the substantial threat of discharge of oil and, pursuant to the OPA, 33 U.S.C. § 2715, became subrogated to all claims, rights, and causes of action thereto.

61.    The NPFC demanded reimbursement for all the outstanding removal costs and damages owed by the DEFENDANTS.  Despite this demand, DEFENDANTS have failed and refused to reimburse the costs and damages for which they are liable.

///

62.     As a result of the HV NEWELL Incident and as a result of failure by DEFENDANTS to pay the full costs resulting from the Incident, in excess of $18,292.33 remains as an unpaid balance from monies due and owing to the United States, plus such other additional amounts to be established according to proof at trial.

## DREDGE MULTNOMAH (FPN S16012)

63.     At all relevant times, the vessel DREDGE MULTNOMAH contained oil, as such term is defined under the OPA, 33 U.S.C. § 2701 *et seq.*

64.     On May 19, 2015, State of Oregon and United States Coast Guard Officials inspected the DREDGE MULTNOMAH and, based on this inspection, the United States Coast Guard Captain of the Port ("COTP") issued an Administrative Order No. 2015-IMD01 determining, *inter alia*, that the DREDGE MULTNOMAH constituted a substantial threat of discharge of oil into the navigable waters of the United States, and required DREDGE MULTNOMAH's owner to make an inventory of the oil on board and thereafter remove and dispose of such oil.  Defendant CLAY JONAK signed an Acknowledgment of Receipt of this Administrative Order on or about July 6, 2015.

65.     DEFENDANTS failed to remove or dispose of oil from DREDGE MULTNOMAH.

66.     After the DEFENDANTS failed to respond, immediately or otherwise, to the substantial threat of discharge of oil into the navigable waters of the United States, the United States commenced a removal action in this matter.

67.     During the course of the removal action, the United States expended substantial "removal costs" and sustained "damages" within the meaning of the OPA, 33 U.S.C. § 2702(b).

68.     The United States, by and through the FOSC, contracted with various entities, including but not necessarily limited to, NRC Environmental Services, to respond to the discharge of oil from DREDGE MULTNOMAH. The United States paid these entities for the removal costs incurred in responding to the discharge of oil and, pursuant to the OPA, 33 U.S.C. § 2715, became subrogated to all claims, rights, and causes of action thereto.

///

69.     On or about January 27, 2016, at the direction of the FOSC, NRC Environmental Services investigated the potential for oil discharge and hazardous substance release from DREDGE MULTNOMAH.  Upon entering the DREDGE MULTNOMAH, it was determined that oil in several tanks posted an imminent substantial threat to the environment.

70.     On May 2, 2016, Federalized clean up and removal operations on DREDGE MULTNOMAH began.  NRC equipment mobilization was brought to the GOBLE MOORAGE and set up. Heating coils were inserted into the aft storage tank on board the MULTNOMAH and heating operations continued throughout the evening.

71.     On May 3, 2016, pumping of the aft tank began with an estimated 3,800 gallons of Heavy Bunker C Oil removed from DREDGE MULTNOMAH.  Upon completion of the aft tank, contractors moved into the tank heating equipment to the port side storage tank and heating operations began and continued throughout the evening.  The first load of product was taken to the Waste Management Hillsboro Site for disposal.

72.     On May 4, 2016, pumping of the port side storage tank began with an estimated 1,200 gallons of Heavy Bunker C Oil removed from DREDGE MULTNOMAH.  Contractors continued throughout the day and successfully worked the heating elements over the installed tank baffles to facilitate the heating and removal of more oil product. Heating operations continued throughout the evening.

73.     On May 5, 2016, pumping of the port side storage tank continued with an estimated 1,325 gallons of Heavy Bunker C Oil removed from DREDGE MULTNOMAH and thereafter taken to the Waste Management Hillsboro Site for disposal. On or about May 6, 2016, pursuant to POLREP 2 AND FINAL, the removal action was deemed completed.

74.     The foregoing substantial threat of discharge of oil, including other acts and omissions to be established according to proof at trial, are hereafter referred to as the "DREDGE MULTNOMAH Incident No. 1."

75.     The removal costs expended on and specifically attributed to the DREDGE MULTNOMAH Incident No. 1 were captured under the Federal Project Number S16012.

///

76.     The DREDGE MULTNOMAH Incident No.1 was proximately caused, *inter alia*, by the acts, omissions, strict liability, and violations of federal construction and/or operating and/or safety regulations by the DREDGE MULTNOMAH, its owners, crew, agents, servants, employees, and others for whom DEFENDANTS were responsible, all within the privity and knowledge of DEFENDANTS.

77.     The NPFC demanded reimbursement for all the outstanding removal costs and damages owed by the DEFENDANTS.  Despite this demand, DEFENDANTS have failed and refused to reimburse the costs and damages for which they are liable.

78.     As a result of the DREDGE MULTNOMAH Incident No. 1 and as a result of failure by DEFENDANTS to pay the full costs resulting from the Incident, in excess of $179,671.88 remains as an unpaid balance from monies due and owing to the United States, plus such other amounts to be established according to proof at trial.

### TUG EARNEST (FPN S16041)

79.     At all relevant times, vessel TUG EARNEST contained oil, as such term is defined under the OPA, 33 U.S.C. § 2701 et seq.

80.     On September 25, 2016, defendant CLAY JONAK reported to the United States Coast Guard that the TUG EARNEST had sunk at its moorings, that the vessel had residual diesel fuel onboard, and that the vessel was discharging oil into the Columbia River.

81.     On September 25, 2016, the United States Coast Guard determined that the TUG EARNEST discharged oil and constituted a continuing substantial threat of discharge of oil into the navigable waters of the United States, and the FOSC issued a Notice of Federal Assumption for an Oil Pollution Incident.  CLAY JONAK signed an Acknowledgment of said Notice of Federal Assumption.

82.     The United States, by and through the FOSC, contracted with various entities, including but not necessarily limited to, NRC Environmental Services, Ballard Marine Construction, and Global Diving and Salvage, Inc. to respond to the discharge of oil from TUG EARNEST.  The United States paid these entities for the removal costs incurred in responding to

///

the discharge of oil and, pursuant to the OPA, 33 U.S.C. § 2715, became subrogated to all claims, rights, and causes of action thereto.

83.     Between September 26, 2016 and October 5, 2016, oil clean-up and oil removal operations were conducted on the TUG EARNEST, during which time an estimated 330 gallons of oil was removed from the TUG EARNEST.

84.     On or about October 5, 2016, pursuant to POLREP 3 AND FINAL, the removal action on TUG EARNEST was deemed completed.

85.     The foregoing discharge and substantial threat of discharge of oil, including other acts and omissions to be established according to proof at trial, are hereafter referred to as the "TUG EARNEST Incident."

86.     The removal costs expended on and specifically attributed to the TUG EARNEST Incident were captured under the Federal Project Number S16041.

87.     The TUG EARNEST Incident was proximately caused, *inter alia*, by the acts, omissions, strict liability, and violations of federal construction and/or operating and/or safety regulations by the TUG EARNEST, its owners, crew, agents, servants, employees, and others for whom DEFENDANTS were responsible, all within the privity and knowledge of DEFENDANTS.

88.     During the course of the removal action, the United States expended substantial "removal costs" and sustained "damages" within the meaning of the OPA, 33 U.S.C. § 2702(b).

89.     The NPFC demanded reimbursement for all the outstanding removal costs and damages owed by the DEFENDANTS.  Despite this demand, DEFENDANTS have failed and refused to reimburse the costs and damages for which they are liable.

90.     As a result of the TUG EARNEST Incident and as a result of failure by DEFENDANTS to pay the full costs resulting from the Incident, in excess of $33,017.92 remains as an unpaid balance from monies due and owing to the United States, plus such other amounts to be established according to proof at trial.

///

///

## GOBLE MOORAGE ASSESSMENT (FPN S17019)

91.    At all relevant times, vessel DREDGE MULTNOMAH, BARGE D.B AMAZON, M/V RIVER QUEEN, THE MANZANILLO, THE LEGO BARGE, THE 25, and THE PANCAKE BARGE contained oil, as such term is defined under the OPA, 33 U.S.C. § 2701 *et seq.*

92.    At all relevant times, vessel DREDGE MULTNOMAH, BARGE D.B AMAZON, and M/V RIVER QUEEN contained hazardous substances, as such term is defined in the CERCLA, 42 U.S.C. § 9601 *et seq.*, and implementing regulations.

93.    At all relevant times, the said VESSELS had previously discharged and/or were continuing to discharge oil and hazardous substances into navigable waters of the United States and/or posed substantial threats of discharge of oil and hazardous substances into the navigable waters of the United States.

94.    On March 17, 2017, a settlement was reached between State of Oregon and defendants CLAY JONAK and ROGER ISON, which agreement required CLAY JONAK and ROGER ISON, and each of them, to vacate the GOBLE MOORAGE by June 1, 2017.

95.    On or about March 28, 2017, the FOSC issued Administrative Orders No. 2017-IMD01 and 2017-IMD02, directing CLAY JONAK and ROGER ISON, to, *inter alia*, remove oil from the VESSELS and thereby prevent and mitigate the discharge and/or substantial threat of discharge of oil into navigable waters of the United States.  The Order further stated, *inter alia,* "This Administrative Order becomes effective immediately upon receipt."  CLAY JONAK acknowledged receipt of said Administrative Orders on March 30, 2017.  ROGER ISON acknowledged receipt of said Administrative Orders on April 26, 2017.

96.    On or about April 28, 2017, the USCG Sector Columbia River IMD requested the CG Pacific Strike Team to assist in conducting an initial assessment of the GOBLE MOORAGE to identify oil and/or hazardous materials for removal from the VESSELS.

97.    Beginning May 9, 2017 and continuing through May 31, 2017, the USCG Sector Columbia River IMD, CG Pacific Strike Team, OR Department of Environmental Quality, and NRC Environmental Services (NRC-E5) conduced a pollution site assessment of the VESSELS,

including the DREDGE MULTNOMAH, BARGE D.B AMAZON, M/V RIVER QUEEN, THE MANZANILLO, THE LEGO BARGE, THE 25, and THE PANCAKE BARGE.

98.    On or about June 1, 2017, the DEFENDANTS vacated the GOBLE MOORAGE. However, DEFENDANTS failed to sufficiently remove or dispose of the oil and hazardous substances from said VESSELS.

99.    Specifically, a number of containers of oil and hazardous substances remained onboard and within the compartments of the DREDGE MULTNOMAH, BARGE D.B AMAZON, M/V RIVER QUEEN, THE MANZANILLO, THE LEGO BARGE, THE 25, and THE PANCAKE BARGE.

100.    In order to mitigate the foregoing substantial threat of discharge of oil and hazardous substances, and in order to safely do so in a manner that would pose the least potential risk to life, property, and the environment, the decision was made to remove the oil and/or hazardous substances from the VESSELS.

101.    On or about June 1, 2017, the FOSC issued a Notice of Federal Assumption to DEFENDANTS, determining that these remaining containers of oil and hazardous substances onboard the DREDGE MULTNOMAH, BARGE D.B AMAZON, M/V RIVER QUEEN, THE MANZANILLO, THE LEGO BARGE, THE 25, and THE PANCAKE BARGE continued to pose a threat of discharge or release of oil and hazardous substances, that DEFENDANTS' actions to mitigate said discharge or release was unsatisfactory, and that effective June 1, 2017, the United States Coast Guard would assume total response activities for the discharge of oil and hazardous substances and the substantial threat of continuing discharge of oil and hazardous substances from the vessels at the GOBLE MOORAGE.

102.    The United States, by and through the FOSC, contracted with various entities to respond to the discharge of oil from these VESSELS.  The United States paid these entities for the removal costs incurred in responding to the substantial threat of discharge of oil and, pursuant to the OPA, 33 U.S.C. § 2715, became subrogated to all claims, rights, and causes of action thereto.

///

103.    Between June 1, 2017 and July 7, 2017, under the direction of the FOSC, contractors performed oil pollution removal operations, which included but was not limited to conducting a site assessment, procuring supplies, and mobilizing necessary heavy equipment and personnel for oil and hazardous waste removal on board the VESSELS.

104.    The foregoing discharge and substantial threat of discharge of oil, including other acts and omissions to be established according to proof at trial, are hereafter referred to as the "GOBLE VESSEL ASSESSMENT".

105.    The removal costs incurred during the GOBLE VESSEL ASSESSMENT (which included costs for contractors' work barges and crane equipment; purchases of miscellaneous supplies that could not be attributed to a single vessel, but was used for the GOBLE VESSEL MOORAGE as a whole; and Pacific Strike Team personnel costs) were captured under Federal Project Number S17019.

106.    On or about August 31, 2017, pursuant to CORRECTED POLREP 3 AND FINAL, the removal action was deemed completed for the GOBLE VESSEL ASSESSMENT.

107.    The GOBLE VESSEL ASSESSMENT was proximately caused, *inter alia*, by the acts, omissions, strict liability, and violations of federal construction and/or operating and/or safety regulations by the VESSELS, their owners, crew, agents, servants, employees, and others for whom DEFENDANTS were responsible, all within the privity and knowledge of DEFENDANTS.

108.    During the course of the removal action, the United States expended substantial "removal costs" and sustained "damages" within the meaning of the OPA, 33 U.S.C. § 2702(b).

109.    During the course of the removal action, the United States expended substantial "removal and remedial costs" and sustained "damages" within the meaning of, *inter alia*, the CERCLA, 42 U.S.C. § 9601(6), 42 U.S.C § 9601(23)-(25), and 42 U.S.C. § 9607(a).

110.    The NPFC demanded reimbursement for all the outstanding removal costs and damages owed by the DEFENDANTS.  Despite this demand, DEFENDANTS have failed and refused to reimburse the costs and damages for which they are liable.

///

111.    As a result of the GOBLE VESSEL ASSESSMENT and as a result of failure by DEFENDANTS to pay the full costs resulting from the Incident, in excess of $680,388.67 remains as an unpaid balance from monies due and owing to the United States, plus such other amounts to be established according to proof at trial.

### DREDGE MULTNOMAH (FPN S17025)

112.    At all relevant times, vessel DREDGE MULTNOMAH contained oil, as such term is defined under the OPA, 33 U.S.C. § 2701 et seq.

113.    At all relevant times, vessel DREDGE MULTNOMAH contained hazardous substances, as such term is defined in the CERCLA, 42 U.S.C. § 9601 *et seq*., and implementing regulations.

114.    On March 17, 2017, a settlement was reached between State of Oregon and defendants CLAY JONAK and ROGER ISON, which agreement required CLAY JONAK and ROGER ISON, and each of them, to vacate the GOBLE MOORAGE by June 1, 2017.

115.    On or about March 28, 2017, the FOSC issued Administrative Orders No. 2017-IMD01 and 2017-IMD02, directing CLAY JONAK and ROGER ISON, to, *inter alia*, remove oil from the vessel and thereby prevent and mitigate the discharge and/or substantial threat of discharge of oil into navigable waters of the United States.  The Order further stated, *inter alia,* "This Administrative Order becomes effective immediately upon receipt."  CLAY JONAK acknowledged receipt of said Administrative Orders on March 30, 2017.  ROGER ISON acknowledged receipt of said Administrative Orders on April 26, 2017.

116.    On or about March 28, 2017, the United States Coast Guard Captain of the Port issued a Captain of the Port Order No. 2017-026, determining the DREDGE MULTNOMAH constituted a substantial threat of discharge of oil and hazardous substances into the navigable waters of the United States, and directing, among other things, that DEFENDANTS comply with Administrative Orders Nos. 2017-IMD01 and 2017-IMD02.  On March 30, 2017, CLAY JONAK signed an Acknowledgment of Receipt of this Captain of the Port Order.

117.    The DEFENDANTS failed to respond, immediately or otherwise, to the discharge and substantial threat of discharge of oil into the navigable waters of the United States.

118.    In order to mitigate the foregoing substantial threat of discharge of oil and hazardous substances, and in order to safely do so in a manner that would pose the least potential risk to life, property, and the environment, the decision was made to remove the oil and hazardous substances from the DREDGE MULTNOMAH.

119.    The United States, by and through the FOSC, contracted with various entities, including but not limited to, Global Diving and Salvage, Inc., to respond to the discharge of oil from DREDGE MULTNOMAH. The United States paid these entities for the removal costs incurred in responding to the substantial threat of discharge of oil and, pursuant to the OPA, 33 U.S.C. § 2715, became subrogated to all claims, rights, and causes of action thereto.

120.    On June 1, 2017, June 4, 2017, and June 7, 2017, oil and hazardous waste removal operations were performed on the DREDGE MULTNOMAH, during which time oil and hazardous substances, including PCBs, were removed from the DREDGE MULTNOMAH.

121.    On or about June 7, 2017, pursuant to POLREP 1 AND FINAL, the removal action was deemed completed.

122.    The foregoing substantial threat of discharge of oil and hazardous substances, including other acts and omissions to be established according to proof at trial, are hereafter referred to as the "DREDGE MULTNOMAH Incident No. 2."

123.    The removal costs expended on and specifically attributed to the DREDGE MULTNOMAH Incident No. 2 were captured under the Federal Project Number S17025.

124.    The DREDGE MULTNOMAH Incident No. 2 was proximately caused, *inter alia*, by the acts, omissions, strict liability, and violations of federal construction and/or operating and/or safety regulations by the DREDGE MULTNOMAH, its owners, crew, agents, servants, employees, and others for whom DEFENDANTS were responsible, all within the privity and knowledge of DEFENDANTS.

125.    During the course of the removal action, the United States expended substantial "removal costs" and sustained "damages" within the meaning of the OPA, 33 U.S.C. § 2702(b). During the course of the removal action, the United States expended substantial "removal and

///

remedial costs" and sustained "damages" within the meaning of, *inter alia*, the CERCLA, 42 U.S.C. § 9601(6), 42 U.S.C § 9601(23)-(25), and 42 U.S.C. § 9607(a).

126.    The NPFC demanded reimbursement for all the outstanding removal costs and damages owed by the DEFENDANTS.  Despite this demand, DEFENDANTS have failed and refused to reimburse the costs and damages for which they are liable.

127.    As a result of the DREDGE MULTNOMAH Incident No. 2 and as a result of failure by DEFENDANTS to pay the full costs resulting from the Incident, in excess of $10,280.50 remains as an unpaid balance from monies due and owing to the United States, plus such other additional amounts to be established according to proof at trial.

### BARGE D.B. AMAZON (FPN S17021)

128.    At all relevant times, BARGE D.B. AMAZON contained oil, as such term is defined under the OPA, 33 U.S.C. § 2701 *et seq*.

129.    At all relevant times, vessel BARGE D.B. AMAZON contained hazardous substances, as such term is defined in the CERCLA, 42 U.S.C. § 9601 *et seq*., and implementing regulations.

130.    On March 17, 2017, a settlement was reached between State of Oregon and defendants CLAY JONAK and ROGER ISON, which agreement required CLAY JONAK and ROGER ISON, and each of them, to vacate the GOBLE MOORAGE by June 1, 2017.

131.    On or about March 28, 2017, the FOSC issued Administrative Orders No. 2017-IMD01 and 2017-IMD02, directing CLAY JONAK and ROGER ISON, to, *inter alia*, remove oil from the vessel and thereby prevent and mitigate the discharge and/or substantial threat of discharge of oil into navigable waters of the United States.  The Order further stated, *inter alia,* "This Administrative Order becomes effective immediately upon receipt."  CLAY JONAK acknowledged receipt of said Administrative Orders on March 30, 2017.  ROGER ISON acknowledged receipt of said Administrative Orders on April 26, 2017.

132.    On March 28, 2017, the United States Coast Guard Captain of the Port issued a Captain of the Port Order No. 2017-025, determining the BARGE D.B. AMAZON constituted a substantial threat of discharge of oil and hazardous substances into the navigable waters of the

United States, and directing, among other things, that DEFENDANTS comply with Administrative Orders Nos. 2017-IMD01 and 2017-IMD02. CLAY JONAK acknowledged receipt of said Order on March 30, 2017. ROGER ISON acknowledged receipt of said Order on April 26, 2017.

133.   On May 11, 2017, the United States served ROGER ISON with a Notice of Federal Assumption for an Oil Pollution Incident. ROGER ISON acknowledged receipt of said Notice.

134.   After the DEFENDANTS failed to respond, immediately or otherwise, to the substantial threat of discharge of oil into the navigable waters of the United States, the United States commenced a removal action in this matter.

135.   In order to mitigate the foregoing continued substantial threat of discharge of oil and hazardous substances, and in order to safely do so in a manner that would pose the least potential risk to life, property, and the environment, the decision was made to remove the oil and hazardous substances from the BARGE D.B. AMAZON, and on May 11, 2017 and May 13, 2017, an estimated 2,800 gallons was removed, including PCBs. From June 1 through June 7, 2017 an additional estimated 26,800 gallons of oil, plus 8,000 gallons of oil and PCB mixtures were removed from the BARGE D.B. AMAZON. On July 14, 2017, the last of the oil and oily mixtures were disposed of.

136.   On or about July 28, 2017, pursuant to CORRECTED POLREP 3 AND FINAL, the removal action was deemed completed.

137.   The United States, by and through the FOSC, contracted with various entities, including but not necessarily limited to, NRC Environmental Services, to respond to the substantial threat of discharge of oil and hazardous substances from BARGE D.B. AMAZON. The United States paid these entities for the removal costs incurred in responding to the discharge of oil and, pursuant to the OPA, 33 U.S.C. § 2715, became subrogated to all claims, rights, and causes of action thereto.

138.   During the course of the removal action, the United States expended substantial "removal costs" and sustained "damages" within the meaning of the OPA, 33 U.S.C. § 2702b).

///

139.    During the course of the removal action, the United States expended substantial "removal and remedial costs" and sustained "damages" within the meaning of, *inter alia*, the CERCLA, 42 U.S.C. § 9601(6), 42 U.S.C § 9601(23)-(25), and 42 U.S.C. § 9607(a).

140.    The foregoing substantial threats of discharge of oil and hazardous substances, including other acts and omissions to be established according to proof at trial, are hereafter referred to as the "BARGE D.B. AMAZON Incident."

141.    The removal costs expended on and specifically attributed to the BARGE D.B. AMAZON Incident were captured under the Federal Project Number S17021.

142.    The BARGE D.B. AMAZON Incident was proximately caused, *inter alia*, by the acts, omissions, strict liability, and violations of federal construction and/or operating and/or safety regulations by the BARGE D.B. AMAZON, its owners, crew, agents, servants, employees, and others for whom DEFENDANTS were responsible, all within the privity and knowledge of DEFENDANTS.

143.    The NPFC demanded reimbursement for all the outstanding removal costs and damages owed by the DEFENDANTS.  Despite this demand, DEFENDANTS have failed and refused to reimburse the costs and damages for which they are liable.

144.    As a result of the BARGE D.B. AMAZON Incident and as a result of failure by DEFENDANTS to pay the full costs resulting from the Incident, in excess of $144,297.61 remains as an unpaid balance from monies due and owing to the United States, plus such other additional amounts to be established according to proof at trial.

## M/V RIVER QUEEN (FPN S17023)

145.    At all relevant times, M/V RIVER QUEEN contained oil, as such term is defined under the OPA, 33 U.S.C. § 2701 *et seq*.  At all relevant times, oil was stored on the M/V RIVER QUEEN, as such term is defined by the OPA.

146.    At all relevant times, vessel M/V RIVER QUEEN contained hazardous substances, as such term is defined in the CERCLA, 42 U.S.C. § 9601 *et seq*., and implementing regulations.

///

147.   On March 17, 2017, a settlement was reached between State of Oregon and defendants CLAY JONAK and ROGER ISON, which agreement required CLAY JONAK and ROGER ISON, and each of them, to vacate the GOBLE MOORAGE by June 1, 2017.

148.   On or about March 28, 2017, the FOSC issued Administrative Orders No. 2017-IMD01 and 2017-IMD02, directing CLAY JONAK and ROGER ISON, to, *inter alia*, remove oil from the vessel and thereby prevent and mitigate the discharge and/or substantial threat of discharge of oil into navigable waters of the United States.  The Order further stated, *inter alia,* "This Administrative Order becomes effective immediately upon receipt."   CLAY JONAK acknowledged receipt of said Administrative Orders on March 30, 2017.   ROGER ISON acknowledged receipt of said Administrative Orders on April 26, 2017.

149.   On March 28 2017, the United States Coast Guard Captain of the Port issued a Captain of the Port Order No. 2017-029, determining the M/V RIVER QUEEN constituted a substantial threat of discharge of oil and hazardous substances into the navigable waters of the United States, and directing, among other things, that DEFENDANTS comply with Administrative Orders Nos. 2017-IMD01 and 2017-IMD02.   CLAY JONAK acknowledged receipt of said Order on March 30, 2017.  ROGER ISON acknowledged receipt of said Order on April 26, 2017.

150.   DEFENDANTS failed to sufficiently remove or dispose of the oil and hazardous substances from M/V RIVER QUEEN.

151.   After the DEFENDANTS failed to respond, immediately or otherwise, to the substantial threat of discharge of oil and hazardous substances into the navigable waters of the United States; the United States commenced a removal action in this matter.

152.   The United States, by and through the FOSC, contracted with various entities, including but not necessarily limited to, NRC Environmental Services, to respond on more than one occasion to substantial threats of discharge of oil and hazardous substances from M/V RIVER QUEEN. The United States paid or will pay these entities for the removal costs incurred in responding to the discharge of oil and, pursuant to the OPA, 33 U.S.C. § 2715, became subrogated and will become further subrogated to all claims, rights, and causes of action thereto.

153.    In order to mitigate the foregoing substantial threat of discharge of oil and hazardous substances, and in order to safely do so in a manner that would pose the least potential risk to life, property, and the environment, the decision was made to remove the oil and hazardous substances from the M/V RIVER QUEEN, and on June 3, 2017, June 4, 2017, June 5, 2017, June 6, 2017, and June 7, 2017, oil and hazardous substance removal operations were conducted on the M/V RIVER QUEEN, during which time, an estimated 925 gallons of oil and an estimated 70 gallons of oil with PCBs was removed from the M/V RIVER QUEEN.

154.    On or about September 1, 2017, pursuant to POLREP 3, the initial removal action was deemed completed.  Since that time, additional oil and hazardous substances were required to be removed from the vessel in order to prevent the continuing substantial threat of discharge of oil and hazardous substances into the navigable waters of the United States from the M/V RIVER QUEEN.  Additional operations commenced in August 2018 and are ongoing.

155.    The foregoing substantial threats of discharge of oil and hazardous substances, subsequent removal of the oil and hazardous substances, including other acts and omissions to be established according to proof at trial, and ongoing removal operations, are hereafter referred to as the "M/V RIVER QUEEN Incident."

156.    The removal costs expended on and specifically attributed to the M/V RIVER QUEEN Incident were captured under the Federal Project Number S17023.

157.    The M/V RIVER QUEEN Incident was proximately caused, *inter alia*, by the acts, omissions, strict liability, and violations of federal construction and/or operating and/or safety regulations by the M/V RIVER QUEEN, its owners, crew, agents, servants, employees, and others for whom DEFENDANTS were responsible, all within the privity and knowledge of DEFENDANTS.

158.    During the course of the removal action, the United States expended and will continue to expend substantial "removal costs" and sustained "damages" within the meaning of the OPA, 33 U.S.C. § 2702(b).

159.    During the course of the removal action, the United States expended and will continue to expend substantial "removal and remedial costs" and sustained "damages" within the

meaning of, *inter alia*, the CERCLA, 42 U.S.C. § 9601(6), 42 U.S.C § 9601(23)-(25), and 42 U.S.C. § 9607(a).

160.   The NPFC demanded reimbursement for all the outstanding initial removal costs and damages owed by the DEFENDANTS.  Despite this demand, DEFENDANTS have failed and refused to reimburse the costs and damages for which they are liable.

161.   As a result of the M/V RIVER QUEEN Incident and as a result of failure by DEFENDANTS to pay the full costs resulting from the Incident, in excess of $86,471.91 remains as an unpaid balance from monies initially due and owing to the United States, plus such other additional amounts to be established according to proof at trial.

162.   The United States is continuing to incur additional costs with respect to continuing pollution removal and response actions pertaining to M/V/ RIVER QUEEN.  The total amount of such costs shall be established according to proof at trial.

### THE MANZANILLO, THE LEGO BARGE, THE 25, and THE PANCAKE BARGE (FPN S17024)

163.   At all relevant times, THE MANZANILLO, THE LEGO BARGE, THE 25, and THE PANCAKE BARGE each contained oil, as such term is defined under the OPA, 33 U.S.C. § 2701 *et seq*.

164.   On March 17, 2017, a settlement was reached between State of Oregon and defendants CLAY JONAK and ROGER ISON, which agreement required CLAY JONAK and ROGER ISON, and each of them, to vacate the GOBLE MOORAGE by June 1, 2017.

165.   On or about March 28, 2017, the FOSC issued Administrative Orders No. 2017-IMD01 and 2017-IMD02, directing CLAY JONAK and ROGER ISON, to, *inter alia*, remove oil from the vessel and thereby prevent and mitigate the discharge and/or substantial threat of discharge of oil into navigable waters of the United States.  The Order further stated, *inter alia,* "This Administrative Order becomes effective immediately upon receipt."   CLAY JONAK acknowledged receipt of said Administrative Orders on March 30, 2017.   ROGER ISON acknowledged receipt of said Administrative Orders on April 26, 2017.

///

166.    On March 28 2017, the United States Coast Guard Captain of the Port issued a Captain of the Port Order No. 2017-030, directing, among other things, that DEFENDANTS comply with Administrative Orders Nos. 2017-IMD01 and 2017-IMD02.    CLAY JONAK acknowledged receipt of said Order on March 30, 2017.  ROGER ISON acknowledged receipt of said Order on April 26, 2017.

167.    DEFENDANTS failed to sufficiently remove or dispose of the oil on THE MANZANILLO, THE LEGO BARGE, THE 25, and THE PANCAKE BARGE.

168.    The United States, by and through the FOSC, contracted with various entities, including but not limited to, NRC Environmental Services, to respond to the substantial threat of discharge of oil from THE MANZANILLO, THE LEGO BARGE, THE 25, and THE PANCAKE BARGE. The United States paid these entities for the removal costs incurred in responding to the discharge of oil and, pursuant to the OPA, 33 U.S.C. § 2715, became subrogated to all claims, rights, and causes of action thereto.

169.    In order to mitigate the foregoing substantial threat of discharge of oil, and in order to safely do so in a manner that would pose the least potential risk to life, property, and the environment, the decision was made to remove the oil from THE MANZANILLO, THE LEGO BARGE, THE 25, and THE PANCAKE BARGE, and on June 1, 2017, June 4, 2017, June 5, 2017, and June 7, 2017, oil removal operations were conducted on THE MANZANILLO, THE LEGO BARGE, THE 25, and THE PANCAKE BARGE, during which time, an estimated 600 gallons of fuel oil and an estimated 30 gallons of hydraulic oil were removed from bilges and tanks on THE MANZANILLO, an estimated 200 gallons of oil were removed from THE LEGO BARGE, an estimated 50 gallons of oil from miscellaneous oil containers on THE 25, and an estimated 1100 gallons of oil were removed from THE PANCAKE BARGE.

170.    On or about July 12, 2017, pursuant to CORRECTED POLREP 1 AND FINAL, the removal action was deemed completed.

171.    The foregoing substantial threat of discharge of oil and the subsequent removal of the oil, including other acts and omissions to be established according to proof at trial, are hereafter referred to as the "FPN S17024 Incident."

172.   The removal costs expended on and specifically attributed to the FPN S17024 Incident were captured under the Federal Project Number: S17024.

173.   The FPN S17024 Incident was proximately caused, *inter alia*, by the acts, omissions, strict liability, and violations of federal construction and/or operating and/or safety regulations by THE MANZANILLO, THE LEGO BARGE, THE 25, and THE PANCAKE BARGE, its owners, crew, agents, servants, employees, and others for whom DEFENDANTS were responsible, all within the privity and knowledge of DEFENDANTS.

174.   During the course of the removal action, the United States expended substantial "removal costs" and sustained "damages" within the meaning of the OPA, 33 U.S.C. § 2702(b).

175.   The NPFC demanded reimbursement for all the outstanding removal costs and damages owed by the DEFENDANTS.  Despite this demand, DEFENDANTS have failed and refused to reimburse the costs and damages for which they are liable.

176.   As a result of the FPN S17024 Incident and as a result of failure by DEFENDANTS to pay the full costs resulting from the Incident, in excess of $10,150.00 remains as an unpaid balance from monies due and owing to the United States, plus such other additional amounts to be established according to proof at trial.

**AND AS FOR A FIRST CAUSE OF ACTION**
**OIL POLLUTION ACT OF 1990**

177.   Plaintiff, United States of America, refers to and incorporates by reference as though fully set forth herein each and every foregoing paragraph of its complaint.

178.   Pursuant to the OPA, 33 U.S.C. § 2701 *et seq*., each responsible party for a vessel from which oil is discharged, or which poses the substantial threat of discharge, into or upon the navigable waters or adjoining shorelines or the exclusive economic zone of the United States, is strictly liable for all costs, damages, and/or disbursements specified in the Act.

179.   Pursuant to the OPA, and under the circumstances herein, all DEFENDANTS are liable to the United States of America, without limitation, for all the aforesaid costs, damages, and/or disbursements sustained by the United States as a result of each separate Incident.

///

**AND AS FOR A SECOND CAUSE OF ACTION**
**OIL POLLUTION ACT OF 1990**

180.   Plaintiff, United States of America, refers to and incorporates by reference as though fully set forth herein each and every foregoing paragraph of its complaint.

181.   Pursuant to the OPA, the Fund shall be subrogated to all rights, claims, and causes of action of claimants to whom it has paid compensation.

182.   As a result of the Incident, the Fund may incur costs, damages, and/or disbursements by reason of claims for removal costs and damages brought against it under the OPA.

183.   Pursuant to the OPA, and under the circumstances herein, all DEFENDANTS, are liable to the United States of America, without limitation, for all such costs, damages, and/or disbursements which may be sustained by the Fund as a result of each separate incident.

184.   The aforesaid unpaid removal costs, damages, and/or disbursements of the Fund, as provided in the OPA, are presently in excess of $1,162,570.82.

**AND AS FOR A THIRD CAUSE OF ACTION**
**OIL POLLUTION ACT OF 1990**

185.   Plaintiff, United States of America, refers to and incorporates by reference as though fully set forth herein each and every foregoing paragraph of its complaint.

186.   Pursuant to the OPA, 33 U.S.C. § 2717(f)(2), the United States is entitled to, and hereby seeks, a declaratory judgment that is binding in any subsequent action or actions that DEFENDANTS are liable for removal costs and damages in any such subsequent action or actions pertaining to each separate Incident.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**(CERCLA, 42 U.S.C. § 9601 *et seq.*)**

187.   Plaintiff, United States of America, refers to and incorporates by reference as though fully set forth herein each and every foregoing paragraph of this Complaint.

188.   Pursuant to the CERCLA, 42 U.S.C. § 9601 *et seq.*, including, but not limited to 42 U.S.C. § 9607, owners, operators, and other entities pertaining to vessels and facilities from

which hazardous substances are released, or which pose the substantial threat of release, into the environment and/or navigable waters of the United States, as defined at 42 U.S.C. § 9601(25) and authorized by Section 104 of the CERCLA, 42 U.S.C. § 9604, are strictly liable for all costs specified in the Act.

189.   DEFENDANTS are liable to the United States by virtue of Section 107(a) of the CERCLA, 42 U.S.C. § 9607(a), for all response costs, remedial costs, and other costs incurred and to be incurred by the United States in connection with the Removal and Response Action pertaining to hazardous substances on and/or discharged from any of the above-listed vessels, including the DREDGE MULTNOMAH, BARGE D.B. AMAZON, and M/V RIVER QUEEN.

**AND AS FOR A FIFTH CAUSE OF ACTION**
**(CERCLA, 42 U.S.C. § 9613(g))**

190.   Plaintiff, United States of America, refers to and incorporates by reference as though fully set forth herein each and every foregoing paragraph of its complaint.

191.   Pursuant to Section 113(g)(2) of the CERCLA, 42 U.S.C. § 9613(g) and 28 U.S.C. § 2201, the United States also seeks a declaratory judgment on liability for response costs that will be binding on any subsequent action to recover further response costs.

**AND AS FOR A SIXTH CAUSE OF ACTION**
**VIOLATION OF FEDERAL DEBT COLLECTION PROCEDURES ACT**
**28 U.S.C. § 3001, *et seq.***

192.   Plaintiff, United States of America, refers to and incorporates by reference as though fully set forth herein each and every foregoing paragraph of its complaint.

193.   Despite the liability, including strict liability, of DEFENDANTS to the United States, all as alleged in this Complaint, on information and belief, DEFENDANTS, in breach of law, including but not limited to, in violation of the provisions of the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001 *et seq.*, have *inter alia*, instead of discharging debts owed to the United States, transferred, sold, spun off, and assigned assets so as to prejudice and cause irreparable harm to the United States.

///

194.    All such actions have caused damages, as will cause damages, to the United States in an amount to be established according to proof at trial

### AND AS FOR A SEVENTH CAUSE OF ACTION
### PRIORITY OF GOVERNMENT CLAIMS
### 31 U.S.C. § 3713

195.    Plaintiff, United States of America, refers to and incorporates by reference as though fully set forth herein each and every foregoing paragraph of its complaint.

196.    Despite the liability, including strict liability, of defendants to the United States, all as alleged in this Complaint, on information and belief, DEFENDANTS, in breach of law, have *inter alia*, instead of discharging debts owed to the United States, transferred, sold, spun off, and assigned assets so as to prejudice and cause irreparable harm to the United States.

197.    All such actions have caused damages, as will cause damages, to the United States in an amount to be established according to proof at trial.

198.    To the extent that DEFENDANTS, and/or their officers, servants, employees, representatives, agents, fiduciaries, or other individuals and entities acting on their behalf or with their authorization, have discharged claims or debts to any other person or entity other than the United States, or in the future discharge claims or debts to any person or entity other than the United States in contravention of, *inter alia*, 31 U.S.C. § 3713, DEFENDANTS, and/or their officers, servants, employees, representatives, agents, fiduciaries, or other individuals and entities acting on their behalf or with their authorization, are liable to the United States for the amount of any such payments.

199.    With respect to any payments in contravention of 31 U.S.C. § 3713, and pursuant to 31 U.S.C § 3713(b), any and all officers, servants, employees, representatives, agents, fiduciaries, or other individuals and entities making such payments are personally liable to the United States for the amount of such payments.

200.    The United States shall amend this Complaint to add as defendants, in their individual capacity, any and all officers, servants, employees, representatives, agents, fiduciaries, or other individuals and entities who, in contravention of 31 U.S.C. § 3713(a) and (b), have

///

already discharged, or in the future discharge, claims or debts to any person or entity other than the United States.

WHEREFORE, the United States of America prays as follows:

1. That United States of America be granted judgment against defendants CLAY JONAK, ROGER ISON, JONAK-ISON PARTNERSHIP, and UNKNOWN DEFENDANTS 1-10, pursuant to the Verified Complaint of the United States herein;

2. That the United States of America be granted declaratory judgment against defendants CLAY JONAK, ROGER ISON, JONAK-ISON PARTNERSHIP, and UNKNOWN DEFENDANTS 1-10 for pollution removal costs or damages binding on any subsequent action or actions to recover further removal costs or damages, plus interest, costs, disbursements, and attorneys' fees.

3. That the United States have constructive trusts as and against any and all assets of defendants CLAY JONAK, ROGER ISON, JONAK-ISON PARTNERSHIP, and UNKNOWN DEFENDANTS 1-10, said constructive trusts being available to satisfy the amounts due and owing to the United States pursuant to the matters alleged in this Complaint

4. For prejudgment and post judgment interest in an amount allowed by law;

5. That damages be awarded to the United States according to losses proved at trial;

6. Such other relief as the Court deems just and proper.

Dated: August 24, 2018.              Respectfully submitted,

BILLY J. WILLIAMS
United States Attorney
RENATA GOWIE, Chief, Civil Division

CHAD A. READLER
Acting Assistant Attorney General
R. MICHAEL UNDERHILL
Attorney in Charge, West Coast Office
U.S. Department of Justice, Civil Division,
Torts Branch, West Coast Office

/s/ Frank J. Anders
FRANK J. ANDERS
Trial Attorney
U.S. Department of Justice, Civil Division,
Torts Branch, West Coast Office
450 Golden Gate Avenue, Room 75395
P.O. Box 36028
San Francisco, California 941023463
Telephone: (415) 436-6648

Attorneys for United States of America

**VERIFICATION**

FRANK J. ANDERS says:

I am one of the attorneys for plaintiff, United States of America, herein, and make this verification by authority for and on its behalf; I have read the foregoing Complaint, know the contents thereof, and from information officially furnished to me believe the same to be true.

I verify under penalty of perjury, in accordance with 28 U.S.C. § 1746, that the foregoing is true and correct.

Dated: August 24, 2018.

                              s/ Frank J. Anders
                              FRANK J. ANDERS

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
United States of America

### DEFENDANTS
Clay Jonak, Roger Ison, Jonak-Ison Partnership, Unknown Defendants 1-10

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant ___Columbia___
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
R. Michael Underhill, Frank J. Anders, U.S. Dept. of Justice, Civil Division, Torts Branch, West Coast Office, 450 Golden Gate Avenue, P.O. Box 36028, San Francisco, CA 94102, (415) 436-6630

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1  U.S. Government Plaintiff
☐ 2  U.S. Government Defendant
☐ 3  Federal Question *(U.S. Government Not a Party)*
☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 367 Health Care/ Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine / ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle / **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability / ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury / ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice / ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | / ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☒ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations / ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education / ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | / ☐ 550 Civil Rights | | | |
| | / ☐ 555 Prison Condition | | | |
| | / ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
33 U.S.C. 2701 et seq.; 42 U.S.C. § 9601 et seq.
Brief description of cause:
Recovery of removal costs and damages under Oil Pollution Act of 1990 and CERCLA.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.
**DEMAND $** in excess of 1,162,000.00
CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE _____    DOCKET NUMBER _____

DATE
08/24/2018
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Plaintiff(s)* | ) | Civil Action No. |
| v. | ) | |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
                                                                    *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*

_____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

|  |  |
|---|---|
| _____<br>*Plaintiff(s)*<br>v.<br>_____<br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____         _____
                                                                      *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*

.

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

|  |  |
|---|---|
| _____<br>*Plaintiff(s)*<br>v.<br><br>_____<br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)  Civil Action No.<br>)<br>)<br>)<br>)<br>) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
                                                              *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*

.

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc: